## Chicago Guaranty Fund Life Society v. Laura E. Wilson.

1. INSURANCE—*Self-destruction—When a Defense.*—Where a policy of life insurance expressly provided that it was issued in consideration of the statements contained in the application therefor, making it a part of the contract, and the application contained the following statement, viz.: " We further agree that death by self-destruction, whether sane or insane, or death caused or superinduced by drunkenness, or by the use of narcotics or opiates within three years of the date of the policy herein applied for, are risks not assumed by the society." The insured having died and the company having pleaded the condition of the application in defense, it was held that the question as to whether the insured came to his death by self-destruction was one of fact for the jury.

**Memorandum.**—Action of assumpsit upon an insurance policy. In the Circuit Court of Christian County; the Hon. JACOB FOUKE, Judge, presiding. Declaration in assumpsit; pleas, general issue and that the insured came to his death by self-destruction, etc.; trial by jury; verdict and judgment for plaintiff; defendant appeals. Heard in this court at the November term, 1893. Reversed and remanded. Opinion filed April 28, 1894.

APPELLANT'S BRIEF, JAMES FRAKE AND DRENNAN & HOGAN, ATTORNEYS.

It is competent for an insurance company to say that it will not hold itself liable for the actions of the assured in any state of insanity, and the real question is, can the court, with such a contract before it, attempt to measure the degree of insanity. It is enough for the purpose of relieving the defendant from liability on this contract that the insured took his own life. Life Insurance Co. v. Terry, 15. Wall. 580; De Gogorza v. Knickerbocker Life Ins. Co., 65 N. Y. 235; Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284; Supreme Commandery v. Ainsworth, 71 Ala. 436; Scarth v. Security Mut. Life Soc., 70 Iowa 346; Sappiger v. Covenant Mut. Ben. Ass'n, 20 Ill. App. 595; Mutual Life Ins. Co. v. Lawrence, 8 Ill. App. 488; Riley v. Hartford Life, etc., Ins. Co., 25 Fed. Rep. 315; May on Insurance (3d Ed.), Sec. 322.

APPELLEE'S BRIEF, RICKS & CREIGHTON, ATTORNEYS.

The contention in this case was mainly on the facts.   The witnesses were before the jury.   They heard the testimony, saw their demeanor on the stand, and found the weight of the evidence and verdict for appellee.   The judge refused to set aside the verdict.

Where there is evidence from which the jury could properly find their verdict, it will not be disturbed, though the evidence may, in the opinion of the Supreme Court, justify a different result.   Ill. & St. Louis R. R. Co. v. Ogle, 92 Ill. 353, 364; Cohen v. Chick, 6 Brad. 280.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment against the appellant society upon its policy of insurance, whereby it insured the life of John T. Wilson in the sum of $1,000 for the benefit of the appellee, his wife.   The policy expressly provided that it was issued in consideration of the answers, statements and agreements contained in the application therefor and made the application a part of the contract of insurance.   The application contained the following agreement: "We further agree that death by self-destruction, whether sane or insane, caused or superinduced by drunkenness or by the use of narcotics or opiates within three years of the date of the policy herein applied for, are risks not assumed by this society."   The application was received by the society on the 6th day of February, 1892, the policy written on the 18th day of that month, and the deceased came to his death on the 3d day of August of the same year.   The appellant company pleaded that the insured intentionally destroyed his own life by poison administered by his own hand which the appellee denied by appropiate pleading.

The truth of this issue was the only material question for the determination of the jury, and none other need have attention in this court.   The insured, at the time of his death, was, and had been for some years, assistant railroad and express agent of the Wabash Railroad Company, at Morrisonville, his brother being agent.   On the day of his

death he left the office about the noon hour and went to his home. The appellee (his wife) and their child were temporarily absent. He ate dinner, which had been prepared by his mother, and laid down upon a bed, ostensibly to rest. His mother soon after discovered that he was unconscious, and had two physicians called. They testified that they found him in a comatose condition, suffering from narcotic poisons. They found at his side in the bed a vial which emitted an odor of chloroform, and was discolored by stains indicating that it had also contained laudanum or opium. His death occurred between six and seven o'clock. His symptoms and sufferings were such as result from chloroform and opium administered internally. The physicians coincided in the opinion that his death was caused by these poisons, and the record is barren of testimony to the contrary. It is idle to contend that the drugs were administered otherwise than by his own hand. It is argued that the opiates might have been taken without suicidal intent. It appeared in the proof that the deceased was using drugs to relieve an irritation of his gums caused by a new set of false teeth. The evidence from which this appeared is that of the village druggist who testified that he compounded a prescription for the deceased several weeks before his death, one of the ingredients of which was laudanum, but he also testified that he saw the bottle found in the bed by the side of the deceased, and that the label upon it was not his label, and that he had none like it. Other evidence in our opinion not only entirely refuted the supposition that the deceased inadvertently used an excessive quantity of chloroform and laudanum, but conclusively established the fact to be that he intentionally took his own life. After his death and upon the same day, an envelope was discovered in a pocket of his vest which was upon his body. It was addressed in his own handwriting to his wife, the appellee, and contained a letter to her, as follows:

"The Wabash Railroad Company."

Form 341.     MORRISONVILLE STATION, August 3, 1892.

"Laura and Baby: Good-by for all time to come. Please don't whip the baby. Pay anything that I owed Bohn and

Bertman; also note in bank signed by myself and F. F Tufts.

Your loving husband,

JOHN.

This letter was upon a sheet of paper furnished by the company for the use of its agents at the station at Morrisonville. The words and figures " Form 341. The Wabash Railroad Company," were in printing, and the words " Morrisonville Station " were an impression of a rubber stamp kept in the office at the station. Otherwise the letter was in the handwriting of the deceased. It was proven also that the deceased was unable to adjust his accounts as clerk of the village, and that his successor in that office had been appointed. It was further shown by wholly uncontradicted evidence that a package of money which had been delivered to the express company at Morrisonville for transmission had disappeared from the safe in the railroad office at that station a few days before his death, and that on the day after his death the express envelope in which this money had been inclosed was found in a drawer of a bureau at his home. The envelope was identified as the identical one taken from the safe and which had contained the money. When found one end was cut off and it was empty. Comment in detail upon the letter and upon the facts proven from which a motive for self-destruction appears, could but lead to unpleasant reflections upon the dead, and seems to us manifestly unnecessary to convince the judgment of any one as to the conclusion that must inevitably follow. We content ourselves therefore with the declaration that the evidence established the fact to be that the deceased voluntarily and intentionally ended his own life. Instructions as to the liability of the society under such stipulations in a policy when death is caused by an insane impulse or delusion were not asked. There was no evidence upon which to base them. The finding of the jury was palpably against the evidence and clearly wrong. The verdict and judgment should have been for the appellant society. For this reason the judgment must be and is reversed, and the cause remanded.